UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RONALD PASQUALE; COLLEEN PASQUALE,** <br><br> Plaintiffs, <br><br> v. <br><br> **INFLUENTIAL PARTNERS, LLC.; PATRICIA A. FITZ GERALD, ESQ.; JACK SWIFT; and JOHN DOES 1-25,** <br><br> Defendants. | Civil Case No.: 16-00012 <br><br> Hon. Peter G. Sheridan <br><br> Motion date: August 15, 2016 |

Plaintiffs' Brief in Support of Plaintiffs' Motion to Dismiss Defendant Influential Partners' Counterclaims or, in the Alternative, to Declare the Mortgage Unenforceable

## Table of Contents

**INTRODUCTION**..................................................................................1

**BACKGROUND AND PROCEDURAL HISTORY** ................................. 2

**LEGAL STANDARD** ................................................................................ 4

**DISCUSSION** .......................................................................................... 4

    I.    The Statutes of Limitation For Defendant's Counterclaims Have Run........ 4

        a.    The Discovery Rule is Inapplicable Because Defendant Could Have Discovered It Had Actionable Claims On March 18, 2010................... 6

        b.    Fraudulent Concealment is Inapplicable Because Defendant Failed to Exercise Due Diligence During the Statutory Period..........................10

    II.    Defendant Fails to State a Claim for Unjust Enrichment Unless the Court Voids the Mortgage Agreement ................................................................12

    CONCLUSION ........................................................................................ 13

# Table of Authorities

**Cases**

*Boldman v. Wal-Mart Stores*
  Case No. 16-0004, 2016 U.S. Dist. LEXIS 17110 (D.N.J. Feb. 11, 2016) .......... 4, 5

*Cetel v. Kirwan Fin. Group, Inc.*
  460 F.3d 494 (3d Cir. 2006) ................................................................. 8, 9, 10

*Forbes v. Eagleson*
  228 F.3d 471 (3d Cir. 2000) ....................................................................... 7

*Fowler v. UPMC Shadyside*
  578 F.3d 203 (3d Cir. 2009) ..................................................................... 4, 5

*In re Caterpillar, Inc.*
  2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015) ......................................... 6

*In re Elec. Carbon Prods. Antitrust Litig.*
  333 F. Supp. 2d 303 (D.N.J. 2004) ............................................................. 12, 13

*In re Processed Egg Prods. Antitrust Litig.*
  2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ..................................... 13

*Kenney v. M2 Worldwide, LLC*
  2013 U.S. Dist. LEXIS 19920 (D.N.J. Feb. 13, 2013) ....................................... 6, 8

*Knit With v. Knitting Fever, Inc.*
  2008 U.S. Dist. LEXIS 103662 (E.D. Pa. Dec. 18, 2008) ..................................... 7

*Malleus v. George*
  641 F.3d 560 (3d Cir. 2011) ....................................................................... 4

*Matthews v. Kidder, Peabody & Co.*
  260 F.3d 239 (3d Cir. 2001) ................................................................. 10, 13

*Overston v. Sanofi-Aventis*
  2014 U.S. Dist. LEXIS 151243 (D.N.J. Oct. 23, 2014) .................................. 14, 15

*Robinson v. Johnson*
  313 F.3d 128 (3d Cir. 2002) ....................................................................... 5

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*
   181 F.3d 410 (3d Cir. 1999) ................................................................................. 6

*Van Orman v. American Ins. Co.*
   680 F.2d 301 (3d Cir. 1982) ............................................................................... 14

**Statutes**

N.J.S.A. § 2A:14-1 ........................................................................................................5

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 11

## INTRODUCTION

Defendant Influential Partners is a predatory lender. It issued to Plaintiffs Ronald and Colleen Pasquale a predatory mortgage that violates virtually every consumer protection statute applicable to mortgages. Defendant deserves to be held accountable. But like a schoolyard bully, rather than own up to its mistakes when confronted, Defendant seeks to blame everyone else, and has thus filed counterclaims against Plaintiffs for Fraud, Equitable Fraud, and Unjust Enrichment. Defendant argues that Plaintiffs, by signing a document that contained untrue representations, induced Defendant to issue predatory loan that it would not have issued otherwise. Notwithstanding the fact that Plaintiffs would presumably be better off without Defendant's "help" (with friends like these…), Defendant ignores the fact that these documents were signed during a late night visit, without the opportunity for attorney review, and under the stress of wrongful foreclosure threats. For now, however, and on this motion, these particular facts are impertinent.

What is pertinent, however, is that Defendant waited too long to conjure up this most recent story. Each of Defendant's claims accrued on March 18, 2010. The statutes of limitations for each of Defendant's counterclaims is six years, meaning they expired on March 18, 2016. Defendant's June 30, 2016 counterclaims are thus untimely, and should be dismissed with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

The facts of this case have been previously set out at length, and in the interest of efficiency, will not be repeated at length here. To summarize: in March 2010, Plaintiffs Ronald and Colleen Pasquale took out a mortgage from Defendant Influential Partners in order to pay off a prior mortgage to stave off foreclosure. In January 2016, in response to Defendant's notice of intention to foreclose on this mortgage, Plaintiffs filed suit, arguing that the terms of this mortgage are predatory, and violate numerous provisions of the Truth in Lending Act, the New Jersey Homeownership Security Act, the Consumer Fraud Act, and the Truth-in-Consumer Contract, Warranty, and Notice Act. Plaintiffs brought claims under the latter two statutes, as well as a claim for violations of the Fair Debt Collection Practices Act against Defendant Patricia Fitz Gerald.

On March 7, 2016, Defendant Influential Partners moved to dismiss Plaintiffs' claims against it. [Dkt. 14.] This motion was denied on April 26, 2016. [Dkt. 23.] On that same day, Plaintiffs filed a Second Amended Complaint, which Defendant Influential Partners answered on May 10, 2016. [Dkts. 24, 25.] Two months later, on June 30, 2016, Defendant Influential Partners filed an Amended Answer, asserting a crossclaim against co-defendant Swift, and counterclaims against Plaintiffs for Fraud, Equitable Fraud, and Unjust Enrichment (hereinafter, "Defendant's

2

Counterclaims"). [Dkt. 36.] Defendant's Counterclaims all arise from the following paragraph contained in the Affidavit of Title, which Ronald and Colleen Pasquale signed on March 18, 2010:

> We have not allowed any interests (legal rights) to be created which affect our ownership or use of this Property. No other persons have legal rights in this Property, except the rights of utility companies to use this property along the road or for the purpose of serving this Property. There are no pending lawsuits or judgments against us or other legal obligations which may be enforced against this Property. No bankruptcy or insolvency proceedings have been started by or against us. We have never been declared bankrupt. No one has any security interest in any personal Property or fixture on this property. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against us, but against others with similar names.

(Def.'s Counterclaims, ¶ 4; Ex. A.) However, according to Defendant's lien and judgment search, Mr. Pasquale had a judgment against him from 1995 which had been docketed as a statewide judgment lien. Therefore, Defendant claims, Mr. Pasquale's representations were intentionally and materially misleading, and that it would not have entered into the mortgage loan transaction if Mr. Pasquale had not made such representations. (Def.'s Counterclaims, ¶¶ 3, 7-8.) Defendant seeks rescission of the mortgage contract, restitution, prejudgment interest, and $570 in costs. (Def.'s Counterclaims, pp. 38-39.)

Plaintiffs now move to dismiss Defendant's Counterclaims on the ground that

3

the statute of limitations expired on March 18, 2010.

## LEGAL STANDARD

When ruling on a Motion to Dismiss pursuant to Rule 12(b)(6), a district court should undertake a three-part analysis. *Boldman v. Wal-Mart Stores*, Case No. 16-0004, 2016 U.S. Dist. LEXIS 17110, *4 (D.N.J. Feb. 11, 2016). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)). Second, the court must accept plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff, though the court may disregard any conclusory legal allegations. *Boldman*, 2016 U.S. Dist. LEXIS at *4 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). Finally, the well-pled facts must elevate plaintiff's claim to plausible, rather than merely "possible." *Id.* (citing *Fowler*, 579 F.3d at 210, 211). "[A] [statute of] limitations defense [may] be raised by a motion under 12(b)(6) but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## DISCUSSION

I. **The Statutes of Limitation For Defendant's Counterclaims Have Run.**

The statutes of limitation for Defendant's Fraud, Equitable Fraud, and Unjust

4

Enrichment are each six years. N.J.S.A. § 2A:14-1. All of Defendant's counterclaims arise from one paragraph in the Affidavit of Title, which was signed on March 18, 2010. (Def.'s Counterclaims, ¶ 4; Exhibit A.) "The statute of limitations accrues on the date of the act or omission that gives rise to the fraud claim, or the date on which the act or omission reasonably should have been discovered." *Kenney v. M2 Worldwide, LLC*, Case No. 12-1059, 2013 U.S. Dist. LEXIS 19920, *10 (D.N.J. Feb. 13, 2013) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 413 (3d Cir. 1999)). Accordingly, barring any tolling, the statute of limitations for all of these claims expired on March 18, 2016 – more than two months ago.

Defendant is not entitled to any tolling that would save its claims. Delayed accrual through the discovery rule or a tolled statute due to fraudulent concealment are the only possible grounds through which Defendant's claims would be timely. *See In re Caterpillar, Inc.*, MDL No. 2540, 2015 U.S. Dist. LEXIS 98784, *149 (D.N.J. July 29, 2015).[1] However, even taking all of Defendant's allegations as true,

---

[1] Though this case also mentions "equitable tolling," fraudulent concealment and equitable tolling appear to be treated as one and the same. *See, e.g. Knit With v. Knitting Fever, Inc.*, Case No. 08-4221, 2008 U.S. Dist. LEXIS 103662, *65-66 (E.D. Pa. Dec. 18, 2008) (in deciding whether a statute of limitations should be equitably tolled, listing the elements of fraudulent concealment).

neither of these are applicable.

### a. The Discovery Rule is Inapplicable Because Defendant Could Have Discovered It Had Actionable Claims On March 18, 2010.

The statutes of limitations for Defendant's Counterclaims began to run on March 18, 2010, which is the date on which Defendant could have discovered its "injury." It thus expired on March 18, 2016. The discovery rule, though not pled in Defendant's Counterclaims, does not act to delay the running of the statute of limitations here.

The discovery rule determines the time of the initial commencement of a limitations period. *Forbes v. Eagleson*, 228 F.3d 471, 486 (3d Cir. 2000). "Under the discovery rule, the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an action claim." *Kenney*, 2013 U.S. Dist. LEXIS at *10-11. The discovery rule has both subjective and objective components. *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006). The first step is objective, and the court must determine whether or not plaintiff "had sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." *Id.*

A defendant bears the burden of showing the existence of such "storm warnings." *Id.* While "storm warnings have not been exhaustively catalogued," they

are "essentially any information or accumulation of data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." *Id.* This is an objective inquiry – it does not hinge on a plaintiff's actual awareness of suspicious circumstances or even plaintiff's ability to understand their import. *Id.* So long as "a reasonable [person] of ordinary intelligence would have discovered the information and recognized it as a storm warning," this first step is met. *Id.*

Once it is determined whether or not, objectively speaking, storm warnings existed, the burden shifts to plaintiff to show that "heeding the storm warnings, they exercised reasonable diligence but were unable to find and avoid the storm." *Id.*

Taking all of the allegations in Defendant's counterclaims as true, as must be done on a Rule 12(b)(6) Motion, it is clear that sufficient "storm warnings" existed on March 18, 2010. Defendant pleads that "[t]he lien and judgment search revealed that there were several judgments against Ronald Pasquale including Judgment against a judgment debtor described as 'Ronald Pasquale' whose address was listed as 1114 Knollwood Drive, Middletown, New Jersey, 07748." (Def.'s Counterclaims, ¶ 3.) This lien and judgment search was conducted before Mr. Pasquale signed the Affidavit of Title, containing the allegedly false representation. In other words, Defendant knew about the judgment against Mr. Pasquale at the time Mr. Pasquale

7

signed the Affidavit of Title, and continued with the transaction anyway. This possible inconsistency – a judgment against an individual named Ronald Pasquale, which is relatively uncommon, met by claims that "it's not me!" – is very obviously a storm warning warranting further investigation. Any person of ordinary intelligence would recognize that.

Thus, because there were objectively "storm warnings," which are evident from the face of Defendant's Counterclaims, the burden shifts to Defendant to show that it exercised reasonable diligence within the statutory period. But Defendant took no steps to uncover the truth beyond asking Mr. Pasquale if the judgment was his or not.

Similar "diligence" was found to be insufficient in two different cases. In *Cetel* the Third Circuit wrote that "[m]erely asking defendants ... is inadequate to show reasonable diligence." *Cetel*, 460 F.3d at 508. It further explained that "plaintiffs who undertake no diligence beyond superficial inquiry of defendants concerning the validity or propriety of their investments cannot obtain the benefit that a finding of reasonable diligence will confer." *Id.* In *Mathews v. Kidder, Peabody & Co.*, the Third Circuit denied plaintiff the benefit of the discovery rule, writing:

> Reasonable due diligence does not require a plaintiff to exhaust all possible avenues of inquiry. Nor does it require the plaintiff to actually discover his injury. At the very least, however, due diligence does require plaintiffs to do

8

> something more than send a single letter to the defendant. If we were to hold that the Appellants exercised reasonable due diligence in this case, it would strip the requirement of any meaningful significance.

260 F.3d 239, 255 (3d Cir. 2001).

These cases could hardly be more on point. Defendant made nothing more than a superficial inquiry to Mr. Pasquale regarding the propriety of their mortgage loan (an investment). Such an inquiry – merely asking a person whose conduct raised storm warnings whether a storm was actually coming – is insufficient to delay the accrual of a claim. As pled, after March 18, 2010, Defendant took no steps until June 24, 2016 to determine whether Mr. Pasquale's statements were accurate, nor did it investigate further to find out who was the actual debtor. (Def.'s Counterclaims, ¶ 5.) At any time during the limitations period, Defendant could have run a credit or background check on Mr. Pasquale to determine his previous addresses; Defendant could have contacted the judgment creditor or its attorney; Defendant could have asked Mr. Pasquale to provide a list of addresses at which he previously resided. Defendant does not plead it did any of those things, because it did not do any of those things.

Defendant's wholesale failure to investigate is made even more remarkable given Defendant's convenient position that it "would not have entered into the mortgage loan transaction … had it known there were outstanding liens or judgments

9

against the property … for which Ronald Pasquale was responsible." (Def.'s Counterclaims, ¶ 8.) Defendant admits it knew that there were judgments against a Ronald Pasquale. (Def.'s Counterclaims, ¶ 3.) If Mr. Pasquale's representation that the judgment was not his was of such vital importance to Defendant's decision to enter into the transaction, one would think that Defendant would have made more of an effort to determine the veracity of this representation. In truth, however, Defendant's minimal investigation should come as no surprise: diligent and thorough lending practices are antithetical to the type of predatory lending in which Defendant prefers to engage. Unfortunately for Defendant, when you live by the sword, your hastily concocted counterclaims may very well die by it.

Accordingly, Defendant has not and cannot avail itself of a deferred accrual date, because, despite the obvious storm warnings, it stuck its head in the sand and proceeded to issued its predatory mortgage loan. Thus, the statute of limitations began to run on March 18, 2010 and expired on March 18, 2016, unless Defendant has successfully pled fraudulent concealment.

### b. Fraudulent Concealment is Inapplicable Because Defendant Failed to Exercise Due Diligence During the Statutory Period.

For similar reasons as set forth above, Defendant is not entitled to toll the statute of limitations pursuant to the "fraudulent concealment" doctrine. Tolling a statute of limitations due to "fraudulent concealment" is an equitable doctrine read

10

into every statute of limitations. *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004). This doctrine comes into play if a plaintiff "was prevented from filing his claims within the statutory period because the defendant fraudulently concealed its action such that the plaintiff could not know of his injury during the limitations period." *Id.* In order to establish this tolling, a plaintiff must plead, with the particularity required by Fed. R. Civ. P. 9(b), the following elements: 1) an affirmative act of concealment by the defendant; 2) that the defendant's actions misled the plaintiff or relaxed its inquiry; and 3) that the plaintiff exercised due diligence during the statutory period. *Id.*

As discussed, Defendant cannot show that it exercised due diligence during the statutory period. This element and the diligence element necessary to trigger the discovery rule rise and fall with one another. *Mathews*, 260 F.3d at 257. If anything, any argument for fraudulent concealment is even weaker than it is for the discovery rule, because the elements of fraudulent concealment must be pled with particularity, including the due diligence factor. *In re Processed Egg Prods. Antitrust Litig.*, MDL No. 2002, 2013 U.S. Dist. LEXIS 119936, *4 (E.D. Pa. Aug. 23, 2013). Defendant does not plead that it undertook any due diligence beyond asking Mr. Pasquale about the judgment. Accordingly, Defendant is not entitled to toll the statute of limitations due to any fraudulent concealment. The statute of limitations

11

on all of Defendant's counterclaims expired on March 18, 2016, and should thus be dismissed with prejudice.[2]

## II. Defendant Fails to State a Claim for Unjust Enrichment Unless the Court Voids the Mortgage Agreement

Defendant seeks relief for the quasi-contractual claim of unjust enrichment in the face of a written mortgage agreement. Defendant acknowledges the existence of the written mortgage contract in its Answer and Counterclaims, and its previously filed Motion to Dismiss. (Def.'s Answer, ¶¶ 1, 2, 9; Def.'s Counterclaims, ¶¶ 2, 23; Dkt. 14, Ex. I.) However, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Overston v. Sanofi-Aventis*, Case No. 13-5535, 2014 U.S. Dist. LEXIS 151243, *27 (D.N.J. Oct. 23, 2014) (Sheridan, J.) (citing *Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). That said, "if the written document is unenforceable, the plaintiff may have an unjust enrichment claim." *Overton*, 2014 U.S. Dist. LEXIS at *27. While

---

[2] Relation back cannot save Defendant's claims, either, as Defendant's first answer in this matter was filed May 10, 2016 – also after the limitations period had run. [Dkt. 25.] Plaintiff can find no support for the tolling of a statute of limitations because Defendant chose to file a Motion to Dismiss rather than an answer. *Cf. Frankentek Residential Sys., LLC v. Buerger*, 15. F. Supp. 3d 574, 581 n.13 (E.D. Pa. 2014) ("[T]he Court finds no support in Pennsylvania case law for the tolling of the statute of limitations for compulsory or permissive counterclaims while a motion to dismiss is pending.").

12

alternative pleading of contract-based and quasi-contract claims is permissible, *id.* at *27-28, Defendant has only pled a quasi-contractual claim. Accordingly, the Court should either dismiss Defendant's Counterclaim for Unjust Enrichment, or void the mortgage contract.

The latter option best comports with the wishes of the parties here. Both parties request that the mortgage contract be terminated or otherwise rescinded. For example, in Plaintiffs' Second Amended Complaint, they request that the Court "void" and/or "terminat[e]" the IP Mortgage. (Dkt. 24, ¶ 94; p. 27, ¶ E.) Defendant similarly asks for "[r]escission of the March 18, 2010 mortgage loan transaction[.]" (Def.'s Counterclaims, p. 38, ¶ A; p. 39, ¶ A.) Since the parties appear to be in agreement that the mortgage loan should be rescinded, Plaintiff respectfully requests that the Court rescind the mortgage loan transaction, or otherwise declare the contract to be unenforceable.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

---

[3] Separately, Plaintiffs believe the mortgage transaction should be declared void or unenforceable because it is unconscionable, and pursuant to the authority of the Court to do so under the Truth in Consumer Contract, Warranty, and Notice Act. Plaintiffs anticipate making a motion on this at a later date. However, the parties' apparent agreement that the mortgage contract should be rescinded seems to be the more efficient path for this relief.

Plaintiff's Motion to Dismiss Defendant's Counterclaims for Fraud, Equitable Fraud, and Unjust Enrichment.


Dated: July 21, 2016                         */s/ Jeremy M. Glapion*

                                               Jeremy M. Glapion
                                               **THE GLAPION LAW FIRM, LLC**
                                               1704 Maxwell Drive
                                               Wall, New Jersey 07719
                                               Tel: 732.455.9737
                                               Fax: 732.709.5150
                                               jmg@glapionlaw.com