MOTION DATE: SEPTEMBER 6, 2016

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RONALD PASQUALE;** | **:** |
| **COLLEEN PASQUALE** | **:** Civil Action No.: 16-00012(PGS) |
| | : |
| Plaintiffs, | : |
| | : DOCUMENT ELECTRONICALLY FILED |
| v. | : |
| | : |
| **INFLUENTIAL PARTNERS, LLC**; | : |
| **PATRICIA A. FITZ GERALD, ESQ.**; | : |
| **JACK SWIFT; and JOHN DOES 1-25**, | : |
| | : |
| Defendants. | : |
| | : |

---

## DEFENDANT INFLUENTIAL PARTNERS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

JACQUELINE B. BITTNER, ESQ.
40 Fayette Street, No. 63
Perth Amboy, New Jersey 08861
Tel:  (732) 324-7415


Attorney for Defendant Influential Partners, L.L.C.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................... ii

PRELIMINARY STATEMENT ...................................... 1

STATEMENT OF FACTS/PROCEDURAL HISTORY ..................... 2

SUMMARY JUDGMENT STANDARD ................................. 6

LEGAL ARGUMENT ........................................... 7

I.    PLAINTIFFS COMMITTED EQUITABLE FRAUD BY MISREPRESENTING
      THAT THE PROPERTY BEING MORTGAGED WAS FREE AND CLEAR OF
      LIENS, ALL WITH THE INTENT THAT DEFENDANT INFLUENTIAL
      PARTNERS RELY ON THOSE MISREPRESENTATIONS ............. 7

      A     Plaintiffs' Representations Regarding the
            Absence of Judgment Liens Against the Property
            Were Material Misrepresentations ................. 8

      B.    Plaintiffs Intended that Defendant Influential
            Partners Rely on Plaintiffs' Misrepresentations .. 10

      C.    Defendant Influential Partners Detrimentally Relied
            Upon Plaintiffs' Misrepresentations .............. 11

II.   IF JUDGMENT FOR EQUITABLE FRAUD IS ENTERED IN FAVOR
      OF IP, PLAINTIFFS' CLAIMS FOR CONSUMER FRAUD AND
      VIOLATION OF THE TCCWNA AGAINST INFLUENTIAL PARTNERS
      MUST BE DISMISSED ..................................... 12

CONCLUSION ............................................... 13

i

## TABLE OF AUTHORITIES

**Page**

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986) ...................................   6

Bonnco Petrol, Inc. v. Epstein,
 115 N.J. 599 (1989).................................. 8, 12

Celotex Corp. v. Catrett,
 477 U.S. 317 (1986)..................................   7

Driscoll v. Burlington- Bristol Bridge Co.,
 28 N.J.Super. 1 (App. Div. 1953)....................... 8, 12

Jewish Ctr. of Sussex Cnty. v. Whale,
 86 N.J. 619 (1981) .................................. 8, 12

Ledley v. William Penn Life Ins. Co.,
 138 N.J. 627 (1995)..................................   8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 475 U.S. 574 (1986) ..................................   6

Merchants Indem. Corp. v. Eggleston,
 37 N.J. 114 (1962) ...................................  12

Slim CD, Inc. v. Heartland Payment Sys., Inc., Civ. No.
 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007)........   7

*State v. Siegler*,
 12 N.J. 520 (1953) ...................................   9

Statutes

18 U.S.C. § 1014, Fraud Enforcement and Recovery Act of 2009

*N.J.S.A.* 2C:28-2 .........................................   9

N.J.S.A. 56:8-1 et seq., New Jersey Consumer Fraud Act .....   4

N.J.S.A. 56:12-14 et seq.,
 New Jersey Truth-in-Consumer Warranty and Notice Act ...   4

Federal Rules

Fed.R.Civ.P. 56 ......................................... 1, 6

ii

## PRELIMINARY STATEMENT

This is a consumer fraud action by defaulting mortgagors against a secondary lender following a business mortgage loan transaction in which the mortgagors, who operate a business from their home, used their home to secure a business debt. The transaction was conditioned on the property being free and clear of liens and judgments other than the first mortgage on the property. During the closing, and after plaintiffs had reviewed a judgment search which revealed judgments against a person described as "Ronald Pasquale," Plaintiffs knowingly misrepresented under oath on an Affidavit of Title that the judgment against "Ronald Pasquale" was against a person with a similar name. They further misrepresented that they had not allowed any interest to be created which affected plaintiffs' ownership interest in the property. Discovery has revealed that (1) plaintiffs' material representation to Influential Partners, L.L.C. ("IP") was false, and (2) that plaintiffs have been serially executing fraudulent Affidavits of Title, or otherwise fraudulently concealing their liability for a 1995 judgment, in multiple mortgage loan transactions over a period spanning more than fifteen years.

Because no genuine issue of material fact exists regarding plaintiffs' fraudulent conduct, IP now moves for summary judgment pursuant to Fed. R. Civ. P. 56 on its counterclaim for equitable fraud. IP seeks a return to the *status quo ante* and a judgment for

1

the principal which IP extended on behalf of the plaintiffs. Second, should the court grant summary judgment in favor of IP for equitable fraud, IP also seeks summary judgment dismissing all of plaintiffs' affirmative claims against IP for alleged improper loan documentation, since the facts underlying those causes of action, even when viewed in the light most favorable to the plaintiffs, never would have occurred but for plaintiffs' fraudulent conduct.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

In early 2010 plaintiffs solicited a secondary mortgage loan from defendant IP.  (Facts ¶ 1).

Prior to the loan closing on March 18, 2010, defendant IP, by and through its sole member, Dennis Rodriguez, received and reviewed a title policy concerning the property to be mortgaged: 771 Maple Avenue, Brick, New Jersey ("the Property"). (Facts ¶ 2). The lien and judgment search revealed that there were several judgments against a person described as "Ronald Pasquale." Those judgments included Judgment Number DJ-313955-1995 in favor of creditor Jersey Central Power and Light against a judgment debtor "Ronald Pasquale" whose address was listed as 1114 Knollwood Drive, Middletown, New Jersey 07748. (Facts ¶ 3).

The mortgage loan transaction with IP closed on March 18, 2010.  (Fact ¶ 4).  At the closing, Plaintiff Ronald Pasquale executed a sworn Affidavit of Title representing that he had not

2

allowed any interest to be created which affected plaintiffs'
ownership interest in the Property, and representing that there
were no pending judgments against him or his wife which could be
enforced against the subject Property.  (Facts ¶ 5).  The
plaintiffs further swore that all liens on the attached judgment or
lien search were not against them, but against others with similar
names.  The plaintiffs further acknowledged under oath as follows:
"we make this Affidavit in order to obtain the Mortgage Loan.  We
are aware that our lender will rely on our truthfulness and the
statements made in this Affidavit."  (Facts ¶ 6).

Following the closing, Defendant IP extended credit to the
plaintiffs by paying off and discharging the plaintiffs' prior
mortgage loan in the amount of $40,222.08.  (Facts ¶ 7).   IP also
provided new funds to the Pasquales in the amount of $2,317.94.
(Facts ¶ 8).  On September 10, 2010, the Pasquales made a one-time
payment of $231.02. (Facts ¶ 9).

IP entered into a mortgage loan transaction with the
Plaintiffs under the condition that IP' mortgage would be second in
priority and that there were no other liens or judgments against
the property other than Plaintiffs' first mortgage.  (Fact ¶ 10).
 As a condition precedent to the mortgage, in paragraph 5(k) of the
mortgage instrument Plaintiffs assured IP that its mortgage would
be second in priority to all other liens or judgments. (Fact ¶ 11).

Defendant IP believed and relied on the truthfulness of

Plaintiffs' representations in the Affidavit of Title and would not have entered into the mortgage loan transaction on March 18, 2010 had it known that there were outstanding liens or judgments for which Ronald Pasquale was responsible. (Facts ¶ 12).

On January 4, 2016 Plaintiffs filed a Complaint asserting claims against IP for violation of the New Jersey Consumer Fraud Act and the New Jersey Truth in Consumer Contract Warranty and Notice Act. (Facts ¶ 13). IP filed an Answer on May 10, 2016. (Facts ¶ 14).

During the course of discovery, defendant IP propounded Rule 36 Requests for Admissions. On June 24, 2016 Plaintiff Ronald Pasquale admitted that he formerly resided at 1114 Knollwood Drive, Middletown, New Jersey 07748. (Facts ¶ 15).

The Plaintiffs married on July 13, 1998. (Fact ¶ 16). Plaintiff Colleen Pasquale's maiden name is Colleen Garvey. (Facts ¶ 17). Since commencement of the instant litigation, discovery has revealed that in or around 1995, Plaintiff Colleen Pasquale née Garvey also resided at 1114 Knollwood Drive, Middletown, New Jersey. (Facts ¶ 18). Plaintiff Colleen Pasquale also denied knowledge of the 1995 judgment against her husband Ronald Pasquale when she executed the 2010 Affidavit of Title. (Fact ¶ 19).

On November 2, 2000, Colleen Pasquale purchased a condominium in her sole name at 136 Brandywine Court, Brick, New Jersey 08723. (Fact ¶ 20). On December 29, 2004, the Pasquales sold the

4

condominium as husband and wife. (Fact ¶ 21). In December 2004 the Pasquales purchased their current home at 711 Maple Avenue, also as husband and wife. (Fact ¶ 22).

Between December 2004 and the present, the Pasquales have jointly entered into at least eight mortgage loan transactions. Those occurred on December 30, 2004, July 1, 2005, January 25, 2006, November 1, 2006, March 7, 2007, March 12, 2008, March 18, 2010, and August 15, 2012. (Fact ¶ 23). In order to consummate those transactions, the Pasquales have been serially executing fraudulent Affidavits of Title relied upon by multiple lenders. Between December 30, 2004 and the present, the Pasquales would have had to execute at least eight Affidavits of Title. (Fact ¶¶ 23-24). Discovery has revealed that, in addition to the false 2010 Affidavit of Title provided to IP, the Pasquales also engaged in the same fraud in connection with at least two other mortgage loan transactions: the 2007 and 2008 mortgage loan transactions with Countrywide Home Loans, Inc. and J.B.S. Investments, Inc. (Facts ¶¶ 25-26).

On June 30, 2016, and with the written consent of all parties, IP filed an Amended Answer and Counterclaim asserting three counterclaims: legal fraud, equitable fraud and unjust enrichment. (Facts ¶ 28). Defendant IP now moves for summary judgment on its claim for equitable fraud and for dismissal of Plaintiffs' claims for violation of the New Jersey Consumer Fraud Act, and the New

Jersey Truth in Consumer Contract, Warranty and Notice Act.

## SUMMARY JUDGMENT STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' ") (internal citations omitted). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury

6

might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFFS COMMITTED EQUITABLE FRAUD BY MISREPRESENTING THAT THE PROPERTY BEING MORTGAGED WAS FREE AND CLEAR OF LIENS, ALL WITH THE INTENT THAT DEFENDANT INFLUENTIAL PARTNERS RELY ON THOSE MISREPRESENTATIONS**

Plaintiffs committed fraud as a matter of law when they induced Defendant IP to extend mortgage loan proceeds by misrepresenting that the subject property was free and clear of liens and by concealing the existence of a prior judgment against Plaintiff Ronald Pasquale. For the reasons set forth below, this Court should enter summary judgment for Defendant IP on its counterclaim for equitable fraud because no genuine dispute of material fact exists regarding Plaintiffs' misrepresentations to Defendant IP.

Equitable fraud requires "proof of: (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." Slim CD, Inc. v. Heartland Payment Sys., Inc., Civ. No. 06-2256, 2007 WL 2459349, at *10 (D.N.J. Aug.

24, 2007) (citing <u>Jewish Ctr. of Sussex Cnty. v. Whale</u>, 86 N.J. 619, 624 (1981). When claiming equitable fraud, "[u]nlike a claim for legal fraud, there need not be proof that the statement was made with the knowledge that it was false." <u>Id</u>. In other words, "[e]ven an innocent misrepresentation can constitute equitable fraud justifying rescission." <u>Ledley v. William Penn Life Ins. Co.</u>, 138 N.J. 627, 635 (1995) (citation omitted). Additionally, "[s]ilence in the face of an obligation to disclose amounts to equitable fraud." <u>Bonnco Petrol, Inc. v. Epstein</u>, 115 N.J. 599, 610 (1989).

Rescission is an available remedy in an action for equitable fraud. <u>*Bonnco Petrol*</u>, 115 N.J. at 611. A rescission of a transaction is "the undoing of it; it returns the parties ... to the very ground upon which they originally stood." <u>Driscoll v. Burlington- Bristol Bridge Co.</u>, 28 N.J.Super. 1, 4 (App. Div. 1953). Its object "is to restore the parties to the *status quo ante* and prevent the party who is responsible for the misrepresentation from gaining a benefit." <u>Bonnco Petrol</u>,115 N.J. at 612.

### A.   Plaintiffs' Representations Regarding the Absence of Judgment Liens Against the Property Were Material Misrepresentations

New Jersey law is clear that misrepresentations in an Affidavit of Title executed in connection with a real estate closing regarding the presence of judgment liens against a property constitutes fraud. Moreover, because representations in an

Affidavit of Title are sworn under oath, wilful false swearing in connection with the Affidavit of Title is a crime of the four degree. _N.J.S.A._ 2C:28-2; _State v. Siegler_, 12 N.J. 520 (1953). In addition, Plaintiffs' conduct is a potential violation of the Fraud Enforcement and Recovery Act of 2009 ("FERA"), 18 U.S.C. § 1014.  Section 1014 prohibits, in relevant part, "knowingly mak[ing] any false statement ... for the purpose of influencing in any way the action of ... a mortgage lending business...." 18 U.S.C. § 1014.  FERA provides that violators "shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Id.

Here, Plaintiffs' denial on March 18, 2010 of responsibility for a 1995 judgment held by Jersey Central Power and Light against Ronald Pasquale was a material misrepresentation. The 1995 judgment operated as a lien against all property owned by Ronald Pasquale. On March 18, 2010, Plaintiffs swore that (1) they had "not allowed any interests (legal rights) to be created which affect our ownership or use of this Property," and (2) "there are no pending ... judgments against us or other legal obligations which may be enforced against this Property," and (3) "[a]ll liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against us, but against others with similar names." (Facts ¶ 5).  The judgment search attached to the 2010 Affidavit of

Title included a 1995 judgment held by Jersey Central Power and Light against a Ronald Pasquale residing at 1114 Knollwood Drive, Middletown, New Jersey 07748. (Facts ¶ 3).

After discovery commenced in this action, Defendant IP served Plaintiff Ronald Pasquale with a request for admissions. Plaintiff Ronald Pasquale candidly admitted that he had lived at 1114 Knollwood Drive, Middletown, New Jersey 07748. (Facts ¶ 15). In 1995, Plaintiff Colleen Pasquale, then known by her maiden name, Colleen Marie Garvey, also resided at 1114 Knollwood Drive, Middletown, New Jersey. (Facts ¶ 18).

**B.    Plaintiffs Intended that Defendant Influential Partners Rely on Plaintiffs' Misrepresentations**

The 2010 Affidavit of Title required Plaintiffs to acknowledge that "our lender will rely on our truthfulness and the statements made in this Affidavit." (Facts ¶ 6). The Plaintiffs wanted the 2010 mortgage loan transaction to proceed as evidenced by their refusal to cancel the transaction during a three day "no-questions asked" rescission period following execution of the mortgage loan documents. (Facts ¶ 27). Plaintiffs' intent can also be inferred from their serial pattern of conduct. Plaintiffs similarly executed false Affidavits of Title in connection with their 2007 and 2008 mortgage loan transactions with Countrywide Home Loans, Inc. and J.B.S. Investments, Inc. (Facts ¶¶ 25-26).

**C.   Defendant Influential Partners Detrimentally Relied Upon Plaintiffs' Misrepresentations**

The integrity of sworn affidavits is undermined if those who swear to tell the truth can do so without repercussion.  Mortgage fraud has serious public consequences.  For that reason, public policy, as expressed by congress in its 2009 enactment of FERA, potentially provides for heavy penalties against those who engage in mortgage fraud.  Also as a matter of public policy, "[o]ne who engages in fraud ... may not urge that one's victim should have been more circumspect or astute." Jewish Center of Sussex Cty., 86 N.J. at 626 n. 1.

Defendant IP believed and relied on the truthfulness of Plaintiffs' representations in the Affidavit of Title and would not have entered into the mortgage loan transaction on March 18, 2010 had it known that there were outstanding liens or judgments against the property. (Fact ¶ 12).  Indeed, the entire transaction was conditioned on the property being free and clear of all liens other than the first mortgage.  (Fact ¶ 11).

Accordingly, defendant IP respectfully requests that the Court grant its  motion for summary judgment for equitable fraud and return the parties to the *status quo ante* by finding that the 2010 mortgage loan transaction between plaintiffs and IP never took

11

legal effect.[1]   IP also requests restitution, that is, that
judgment be entered in IP's favor in the amount of $42,540.02
representing return of principal minus a credit to the plaintiffs
for their one-time payment of $231.02 in September 2010.[2] (Fact ¶
9).  This would result in final judgment to IP in the amount of
$42,309.00.

## II.   IF JUDGMENT FOR EQUITABLE FRAUD IS ENTERED IN FAVOR OF IP, PLAINTIFFS' CLAIMS FOR CONSUMER FRAUD AND VIOLATION OF THE TCCWNA AGAINST INFLUENTIAL PARTNERS MUST BE DISMISSED

A rescission of a transaction is "the undoing of it; it
returns the parties ... to the very ground upon which they
originally stood." Driscoll, 28 N.J. Super. at 4.  The object of
rescission "is to restore the parties to the *status quo ante* and
prevent the party who is responsible for the misrepresentation from
gaining a benefit." Bonnco Petrol,115 N.J. at 612.

---

[1]  IP has asserted counterclaims for both legal and
equitable fraud.  "When a contract is obtained by fraud, the law
grants the injured party a choice. He may rescind or affirm. If
he rescinds, he must return what he received ..." Merchants
Indem. Corp. v. Eggleston, 37 N.J. 114, 130 (1962).  By moving
for summary judgment on equitable fraud, IP is making an election
of remedies.  Accordingly, if the court were to grant IP summary
judgment on its count for equitable fraud, IP's claim for legal
fraud must be dismissed.  Additionally, in exchange for a
judgment against the plaintiffs in the amount of $42,309.00 for
equitable fraud, IP would lose its mortgage. Furthermore, IP's
election to pursue equitable fraud, rather than affirm the
contract, presupposes that the court will dismiss all of
plaintiffs' claims against IP as set forth in Point II below.

[2]  IP extended funds in the amounts of $40,222.08 to pay off
Plaintiffs' prior secondary mortgage loan and $2,317.94 cash back
paid directly to the plaintiffs.  (Facts ¶¶ 7-8).

Prior to the 2010 mortgage loan transaction, plaintiffs had no claim for consumer fraud or violation of the TCCWNA.  Equity would not be served by returning IP to the *status quo ante* but not the plaintiffs.

Accordingly, defendant IP respectfully requests that judgment be entered in favor of IP dismissing plaintiffs' claims under the New Jersey Consumer Fraud Act and the New Jersey Truth-in-Consumer Warranty and Notice Act in their entirety.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Influential Partners, L.L.C. respectfully requests that the Court grant its motion for summary judgment in its entirety.

Respectfully submitted,


*s/Jacqueline B. Bittner*
Jacqueline B. Bittner

Dated: August 1, 2016

13